UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:16-00075-1 |
| | ) | Judge Sharp |
| LEMAR JORDAN GREENE | ) | |

## MEMORANDUM

Defendant Lemar Greene has filed objections to the Presentence Report ("PSR"), arguing that he should be deemed a Tier I offender under the Sex Offender Registration and Notification Act ("SORNA"). In response, the Government asserts that the PSR is correct, and that Defendant's prior convictions in Oregon properly qualify him as a Tier III offender. Having considered the arguments raised by the parties (Docket Nos. 34-38 & 40), the Court finds that Defendant is a Tier I offender and he will be sentenced as such.

## I. Background

On April 6, 2016, a federal grand jury returned an Indictment against Defendant charging him with failing to update his sex offender registration upon moving to Tennessee. The basis for the Indictment stems from the fact that, on September 9, 2008, Defendant pled guilty in Washington County, Oregon to two counts of Attempted Sexual Abuse in the First Degree in violation of Oregon Revised Statute ("ORS") § 163.427.

In the underlying state court Indictment, defendant was charged with six crimes, including touching the vaginal area and buttocks of a female victim under the age of 14. He was also charged with causing a female victim under the age of 14 to touch his penis.

Upon acceptance of his pleas of guilt, Defendant was sentenced to 36 months of

1

imprisonment to be followed by 5 years of supervision. Additionally, Defendant was required by the state court judgment to register in Oregon as a sex offender for the rest of his life.

According to the PSR, Defendant last registered in Oregon on July 30, 2014. In December 2014, he moved to Nashville, Tennessee, but did not register as a sex offender in this state at that time. In fact, Defendant did not register as a sex offender in Tennessee until February 16, 2016, and only after being instructed to do so by law enforcement authorities.

## II. Legal Discussion

SORNA makes it a federal crime for a sex offender who meets certain requirements to "knowingly fai[l] to register or update a registration as required[.]" 18 U.S.C. § 2250(a)(3). Among those requirements is that a sex offender register "in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). It also requires that an offender keep his registration current by reporting any change in residence within 3 days. Id. § 16913 (c).

"SORNA sweeps broadly, but its broad sweep discriminates among three sex offender tiers 'depending on the seriousness of [the defendant's] underlying sex offense.'" United States v. Gudger, 624 F. App'x 394, 397 (6th Cir. 2015) (quoting United States v. White, 782 F.3d 1118, 1129 (10th Cir. 2015)). The three offender tiers are specified by statute.

At the high end is a Tier III offender, and, so far as relevant, "means a sex offender whose offense is punishable by imprisonment for more than 1 year" and is "comparable to or more severe than . . . aggravated sexual abuse or sexual abuse (as described in Sections 2241 and 2242 of Title 18)" or an attempt to commit such an act. 42 U.S.C. § 19611(4). In the middle is a Tier II offender, which includes "a sex offender other than a tier III sex offender whose offense is punishable by

imprisonment of more than 1 year" where the offense (or attempt) is "comparable to or more severe" than "coercion and enticement (as described in section 2422(b) of Title 18)"; or "abusive sexual contact as described in section 2244 of Title 18)." Id. § 16911(2). At the low end is a Tier I offender and "means a sex offender other than at tier II or tier III sex offender."" Id. § 16911(2). A Tier I sex offender is required to keep his registration current for 15 years; a Tier II for 25 years; and a Tier III for life. Id. § 16915(b)(2).

The three different categories of offenders are incorporated into the United States Sentencing Guidelines ("U.S.S.G.") for determination of a defendant's base offense level. A Tier III offender has a base offense level of 16, the level for a Tier II offender is 14, and the level for a Tier I offender is 12. U.S.S.G. § 2A3.5(a).

Because both Tier II and Tier III statuses require that a sex offense be "comparable to or more severe" than specified federal offenses and Tier I only applies by default, the critical issue in this case is how to make the comparison given Defendant's convictions for crimes under state law. "Courts have embraced two analytical frameworks for such inquiries: 1) the 'categorical approach' and its derivative, the 'modified categorical approach,' and 2) the 'circumstance-specific approach' (also known as the 'noncategorical approach')." United States v. Berry, 814 F.3d192, 195 (8th Cir. 2016).

In Descamps v. United States, 133 S. Ct. 2276 (2013) the Supreme Court addressed the categorical approach, albeit in the context of the Armed Career Criminal Act. The Court explained that this approach "compare[s] the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime – i.e., the offense as commonly understood," with "[t]he key" being "elements, not facts." Id. at 2281, 83. "[A] variant of this method—labeled

3

(not very inventively) the 'modified categorical approach'" is used for divisible statutes and "permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." Id. at 2283.[1] The circumstance-specific approach "is a different species of analysis altogether," and "focuses on the facts – not the elements – relating to the prior conviction." United States v. Price, 777 F.3d 700, 705 (4th Cir. 2015). This "broader framework applies when the federal statute refers 'to the specific way in which an offender committed the crime on a specific occasion,' rather than to the generic crime." Id.

Here, the Government asserts that the Court "must employ the circumstance-specific approach when assessing whether the defendant's 2008 conviction for first degree sexual abuse is a proper predicate for a Tier III offender classification." (Docket No. 33 at 5). Defendant argues that the "Court should apply the modified categorical approach, and it should do so without using [an] age exception." Id. at 3.

To date, the Sixth Circuit has not definitively identified which of the categories should be used in determining a Tier level for purposes of SORNA. In fact, in United States v. Stock, 685 F.3d 621, 628 (6th Cir. 2012), the court "decline[d] to decide whether it would have been appropriate for the district court to inquire into the specific factual circumstances of [defendant's state] violations, rather than to limit itself to the fact of [defendant's] convictions." See also, United States v Gudger, 624 Fed. App'x 394, 397 n.1 (6th Cir. Aug. 26, 2015) (declining to "decide whether the district court should have applied the categorical approach when placing [defendant] in a SORNA tier"). Worse

---

[1] These types of documents are commonly referred to as "Shepard materials" or "Shepard-approved documents" within the meaning of Shepard v. United States, 544 U.S. 13 (2005)

yet, its "sister circuits['] [have] admitted difficulty in answering this question." United States v. Mulverhill, 833 F.3d 925, 929 (8th Cir. 2016); see also, Stock, ("Admittedly, there was (and remains) some doubt about the extent to which Guidelines § 2A3.5(a) directs district courts to look beyond the mere fact of a prior sex-offense conviction and into the specific factual circumstances of that offense.").

In United States v. Byun, 539 F.3d 982, 990 (9th Cir. 2008), the Ninth Circuit acknowledged that "courts usually apply a categorical, or modified categorical, approach to determine whether the crime of which the defendant was convicted . . . provides the basis for a sentencing enhancement, rather than allowing examination of the underlying facts of an individual's crime." However, the court went on opine that the "best reading of the statutory structure and language is that Congress contemplated a non-categorical approach as to the age of the victim in determining whether a particular conviction is for a 'specified offense against a minor,'" and that SORNA's legislative history "fully supports this conclusion." Id. at 992. Even so, that court expressed "no conclusion as to whether a non-categorical approach is permitted with regard to any facts other than the age of the victim." Id. at 994 n. 15.

Byun was followed by the Eleventh Circuit's opinion in United States v. Dodge, 597 F.3d 1347 (11th Cir. 2010). Noting that it, too, "generally applies a categorical or modified categorical approach to statutory construction in the context of . . . enhancement of criminal sentences," the Eleventh Circuit found "the Ninth Circuit's reasoning . . . persuasive and instructive for our construction of SORNA," and "its approach supports our conclusion that SORNA permits examination of the defendant's underlying conduct – and not just the elements of the conviction statute – in determining what constitutes a 'specified offense against a minor.'" Id. at 1353-54.

5

After then examining the statutory language, the court in <u>Dodge</u> concluded that "[a]ll signs point to only one reasonable conclusion – we may look beyond [defendant's] conviction statute to the underlying facts of his offense to determine whether his offense qualifies as a "sex offense against a minor." <u>Id</u>. at 1354.

Similarly, the Tenth Circuit in <u>United States v. White</u>, 782 F.3d 1118, 1135 (10th Cir. 2015) held that courts "should apply a categorical approach to sex offender tier classifications designated by reference to a specific federal statute, but . . . employ a circumstance-specific comparison for the limited purpose of determining the victim's age." This conclusion was based on "the text of the statute, its legislative history, and . . . equitable and practical considerations." <u>Id</u>.

More recently, both the Eighth and the Fourth Circuits weighed in on the issue. In <u>United States v. Berry</u>, 814 F.3d 192, 197 (4th Cir. 2016), the Fourth Circuit "agree[d]" with the Tenth Circuit's decision in <u>White</u> and stated that "Congress's decision to reference in SORNA a victim 'who has not attained the age of 13 years,' 42 U.S.C. § 16911(4)(A)(ii), must therefore be read as an instruction to courts to consider the specific circumstances of a victim's age, rather than simply applying the categorical approach." In <u>United States v. Hill</u>, 820 F.3d 925 (8th Cir. 925 (8th Cir. 2016), the Eighth Circuit agreed with the "[t]hree other circuits [to] have considered how courts should determine if a prior offense constitutes 'conduct that by its nature is a sex offense against a minor under SORNA," and their conclusion that "[c]ourts should employ a circumstance-specific approach." <u>Id.</u> at 1005 (citing <u>Price</u>, 777 F.3d at 708); <u>Dodge</u>, 597 F.3d 1347, 1356 (11th Cir. 2010); <u>Byun</u>, 539 F.3d at 991-92).

It has been recently observed that "which approach applies to the three tier classifications set forth in §§ 16911(2), (3), and (4)" is a "quagmire[.]" <u>United States v. Mulverhill</u>, 833 F.3d 925,

6

930 (8th Cir.. 2016). Nevertheless, the Court reads the foregoing decisions as generally endorsing the categorical approach for SORNA violations, except for purposes of determining the victim's age. As for the age of the victim only, the court can look to the specific circumstances to determine if the conduct is a sex offense against a minor. Given that understanding, and in the absence of controlling authority from the Sixth Circuit, that is the approach the Court will use in this case.

The actual age of the minor victim is relevant because, for purposes of Tier III (but not Tier I) status, the sex offender must have committed, so far as relevant, either "aggravated sexual abuse or sexual abuse (as described in section 2241 and 2242 of Title 18")" or "abusive sexual contact (as described in section 2244 of Title 18) against a minor who has not obtained the age of 13 years." 42 U.S.C. § 16911(4)(A)(ii). Here, Defendant fits the latter mold because, while the statute merely identified the victims as being under 14 years old in keeping with the language of the Oregon statute, the specific circumstances of his offense show that one victim was 9 to 10 years old at the time of the offenses charged in counts 1 through 3 of the indictment, while the second victim was 12 to 13 years old at the time of the offenses charged in counts 4 through 6 of the indictment. Defendant does not argue otherwise.

What he does argue, however, is that the Oregon statute is broader than the federal statutes. The Court agrees.

As indicated previously, the relevant counts of Defendant's convictions were for violations of ORS § 167.427. That statute provides:

(1) A person commits the crime of sexual abuse in the first degree when that person:

(a) Subjects another person to sexual contact and:

(A) The victim is less than 14 years of age;

7

> (B) The victim is subjected to forcible compulsion by the actor; or
>
> (C) The victim is incapable of consent by reason of being mentally defective, mentally incapacitated or physically helpless; or
>
> (b) Intentionally causes a person under 18 years of age to touch or contact the mouth, anus or sex organs of an animal for the purpose of arousing or gratifying the sexual desire of a person.
>
> (2) Sexual abuse in the first degree is a Class B felony.

Or. Rev. S. § 163.427.

The Oregon statute is divisible if for no other reason than it proscribes sexual contact with both humans and animals and requires the Court to utilize the modified categorical approach to determine which subsection serves as the basis for Defendant's counts of convictions. See United States v. Rocha-Alvarado, 843 F.3d 802, 807 (9th Cir. 2016) ("As the Oregon statute of conviction is overinclusive of the federal crime with regard to the bestiality component and as (1)(a) is divisible from (1)(b), we apply the modified categorical approach here."). From the underlying state court indictment,[2] it is clear that Defendant was convicted of violating Section 1(a)(A), to wit, subjecting a victim under the age of 14 to sexual contact.

On its face, Section 1(a)(1) is extremely broad; it does not classify offenses based on the mental state of the victim, the reason the victim was subjected to the sexual contact, or the events leading up to the contact. The pivotal question, therefore, is whether that statute is broader than all of the federal statutes which denote Tier III status. In other words, for Defendant to qualify as a Tier III sex offender under SORNA, the Oregon statute must be "comparable to or more severe than" one

---

[2] Under the modified categorical approach which "calls for looking beyond the mere fact of conviction," an indictment is a Shepard-approved document.. United States v. Prater, 766 F.3d 501, 511 (6th Cir. 2014).

8

of the following offenses: 18 U.S.C. § 2241 (aggravated sexual abuse), § 2242 (sexual abuse), or § 2244 (abusive sexual contact) against a minor who has not attained the age of 13 years. It is not.

The Oregon statute is broader than the aggravated sexual abuse statute because it does not require force (or the threat of force), unconsciousness or intoxication, or interstate travel while 18 U.S.C. § 2241 does. Likewise, the Oregon statute is broader than 18 U.S.C. § 2242 because it does not require a threat, placement in fear, incapacity to appraise the nature of the conduct, or physical incapability to decline participation. And, although the analysis is a bit more complicated, the Oregon statute is also broader than abusive sexual contact described in 18 U.S.C. § 2244.

So far as relevant, Section 2244 replaces the term "sexual act" with "sexual contact" for certain provisions of Sections 2241, 2242 and 2243, including Section 2243(a)'s provision which, as modified by Section 2244, criminalizes knowingly engaging in sexual contact with another person who is at least 12 years of age but not 16. "Sexual contact," in turn, is defined as "the intentional touching either directly or through the clothing of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse any person[.]" 18 U.S.C. § 2246(3).

The Government argues that the "plain reading of the statutes clearly illustrates that the federal definition of sexual contact is broader than Oregon's definition." (Docket No. 37 at 3). It posits that "under the federal definition of sexual contact, the grabbing of a woman's genitalia would also be criminal if it were done with the intent to abuse, humiliate, harass, or degrade," but "if a defendant grabbed a woman's genitalia with the intent to humiliate or degrade, the defendant's touching would not be criminal under Oregon's definition of sexual contact." (Id.). Similarly, the Government suggests that "touching the male breasts may or may not be a crime under Oregon law

9

depending on whether the person being touched subjectively considers the male breasts to be an intimate area," but "[u]nder the federal definition, regardless of subjective beliefs, the touching of the male breasts would be criminal if done with the intent to abuse, humiliate, harass, degrade, or for arousal or sexual gratification." (Id. at 3-4).

Assuming the Government's hypotheticals correctly state the law, its argument based on those hypotheticals is immaterial. The issue is not whether federal law is broader, but rather whether Oregon law is broader. This is because the analysis focuses on whether, looking solely at the elements of the two offenses, one can know as a fact a defendant committed the federal offense when he or she committed the state offense. Descamps, 133 S. Ct. at 2283 ("But if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate . . . ."); Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013) ("[A] state offense is a categorical match with a generic federal offense only if a conviction of the state offense necessarily involved facts equating to the generic federal offense.").

While the federal definition of sexual contact contains a list of specific body parts, the Oregon definition does not. Rather, sexual contact under Oregon law includes "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party," ORS § 163.305(6), with "intimate parts" potentially being extremely broad. This is because the Oregon Supreme Court has held that "intimate parts of a person" include subjectively intimate body parts, State v. Woodley, 760 P.2d 884, 887 (Or. 1988), and may go so far as to encompass a neck, hips or legs, State v. Miles, 357 P.3d 522, 528–30 (Or. App. Ct. 2015) depending on the subjective beliefs of the victim and what defendant knew or should have known.

The recent decision of the United States Court of Appeals for the Ninth Circuit in <u>United States v. Rocha-Alvarado</u>, 843 F.3d 802 (9th Cir. 2016) does not alter this Court's conclusion. While the Ninth Circuit discussed ORS § 163.427 in the context of sentencing, its concern was with Application Note (B)(iii) to U.S.S.G. § 2L1.2, which, as it pointed out, is generic, broader than Section 2243, and includes all statutes that "criminalize conduct that (1) is sexual, (2) involves a minor, and (3) is abusive." <u>Id</u>. at 808. Simply put, "§ 2243 does not fully define the universe of sexual offenses contemplated by U.S.S.G. § 2L1.2's term sexual abuse of a minor.'" <u>Id</u>. (citing, <u>United States v. Medina-Villa</u>, 567 F.3d 507, 514-16 (9th Cir. 2009)).

### III. Conclusion

Based upon the foregoing, the Court finds that Or. Rev. S. § 163.427 is not comparable to and sweeps broader than the predicate federal offenses for Tier III status under SORNA. Accordingly, Defendant will be sentenced as a Tier I offender.

An appropriate Order will enter.

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE